UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE KIMBRO, | ) | 1:15CV1093 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| WARDEN, Grafton Corr. Inst., | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

The petitioner Terrance Kimbro ("Kimbro") has filed a petition pro se for a

writ of habeas corpus, arising out of his 2008 conviction for murder, with a firearm

specification, in the Lorain County (Ohio) Court of Common Pleas.  In his petition,

and his supplement, Kimbro raises three grounds for relief:

> 1.  Appellant contends his Sixth Amendment Rights to effective
> assistance of counsel was violated, When counsel failed to request an
> evidentiary hearing to question the whereabouts of exculpatory
> evidence that was obtain[ed] by the Elyria Police Department.
>
> 2.  Appellant contends [Prosecutorial] Misconduct, in violation of
> Appellant's Fifth Amendment [Right] of Due Process of law by not
> disclosing Exculpatory Evidence in the Discovery and when it was
> presented upon the record as valuable evidence to the defense in
> violation of [Brady].
>
> 3.  Petitioner's sentence is unconstitutional as, it supports two issues of
> Allied offenses and offenses with the same animus and import.

(Doc. 1, at [20]; doc. 5, at 3, 10.)

The respondent has filed a motion to dismiss (doc. 8), and Kimbro has filed a

Traverse (doc. 9). The respondent contends that Kimbro's petition is untimely.

(Doc. 8, at 6-7.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals provided the following background:

On February 8, 2007, the Lorain County Grand Jury indicted Kimbro on a litany of offenses including murder, felonious assault, and attempted murder, along with attendant firearm and repeat violent offender specifications. After initially pleading not guilty at arraignment, Kimbro entered a plea[1] of guilty to the charges in the indictment. The trial court imposed an aggregate sentence of 18 years to life imprisonment.

More than four years after he was sentenced, Kimbro filed a pro se motion to withdraw his plea. The trial court issued a journal entry denying the motion on October 5, 2012. On January 7, 2013, Kimbro filed a motion for leave to file a delayed appeal from the October 5, 2012 order. This Court denied Kimbro's motion for leave to appeal on the basis that he had provided insufficient reasons to justify the delay.

Kimbro subsequently filed a second pro se motion to withdraw his plea. The trial court denied the motion on November 12, 2013.

(Doc. 8, RX 18, at 1-2; State v. Kimbro, No. 13CA010506, 2014 WL 5508215, at *1

(Ohio Ct. App. Nov. 3, 2014).)

On Nov. 22, 2013, Kimbro filed a notice of appeal of the trial court's denial of

his second motion to withdraw his plea. (Doc. 8, RX 14-15.) The court of appeals

---

[1] [Plea was entered May 7, 2008. (Doc. 8, RX 3.)]

ruled that the issues he raised were barred by res judicata, and affirmed the judgment of the trial court.  (Doc. 8, RX 18; Kimbro, 2014 WL 5508215.)

Kimbro appealed this decision to the Supreme Court of Ohio.  (Doc. 8, RX 19-20.)  On April 29, 2015, the court declined to accept jurisdiction of the appeal.  (Doc. 8, RX 21; State v. Kimbro, 142 Ohio St.3d 1450, 29 N.E.3d 1004 (2015).

Kimbro filed a petition for a writ of habeas corpus in this court on May 29, 2015.  (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

3

governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Kimbro has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

4

## III.  STATUTE OF LIMITATIONS

The respondent argues that the petition should be denied as untimely filed. (Doc. 8, at 6-7.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final."  Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)).  The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari.  Gonzalez v. Thaler, 132 S.Ct. 641, 653-654 (2012); Clay v. United States, 537 U.S. 522, 528 n.3 (2003).  A habeas petitioner filing for collateral relief does not benefit from the 90 day certiorari period.  Lawrence v. Florida, 549 U.S. 327 (2007) (interpreting 28 U.S.C. § 2244(d)(2)).

Kimbro's conviction became final with the expiration of time for direct review of his conviction and sentencing.  Kimbro was sentenced on his conviction on May 7, 2008.  (Doc.8, RX 4.)  Under Ohio law, Kimbro had 30 days within which to file his direct appeal after the date of sentencing.  Ohio R. App. P. 4(A).  Since he did not file a timely direct appeal, his conviction became final 30 days after the journal

entry of sentencing on May 7, 2008.  (Doc. 8, RX 4.)  The statute began to run on

June 6, 2008, and expired one year later.  See, e.g., Keeling v. Warden, 673 F.3d

452, 459-460 (6th Cir. 2012), cert. denied, 133 S.Ct. 141 (2012); Goodballet v. Mack,

266 F.Supp.2d 702, 705 (N.D. Ohio 2003).  Thus, Kimbro's petition filed on May 29,

2015, was untimely.  28 U.S.C. § 2244(d)(1)(A).

The limitations period is tolled while "properly filed" state post-conviction or

collateral proceedings are pending.  Souter v. Jones, 395 F.3d 577, 585 (6th Cir.

2005); Searcy v. Carter, 246 F.3d 515, 517-518 (6th Cir.), cert. denied, 534 U.S. 905

(2001); 28 U.S.C. § 2244(d)(2). Although filing a collateral motion may toll the

running of a pending, unexpired one-year limitations period, Souter, 395 F.3d at

585, it will not "revive" the statute, or cause it to begin running anew.  Hill v.

Randle, No. 00-4168, 2001 WL 1450711, at *2 (6th Cir. Nov. 7, 2001); Searcy, 246

F.3d at 519; Leon v. Bradshaw, No. 1:05CV875, 2006 WL 1624430, at *4 (N.D. Ohio

June 6, 2006).

Kimbro filed a motion to withdraw his guilty plea on Sept. 25, 2012.  (Doc. 8,

RX 5.)  However, the habeas statute of limitations had expired in June 2009.

Kimbro's motion would not revive the statute, and his habeas petition is untimely.

In his Traverse, Kimbro  argues that the habeas statute should be tolled

while his motion(s) to withdraw plea were pending.  (Doc. 9, at [4].)  However, as

noted above, the limitations period had already expired by the time his first motion

to withdraw plea was filed.

6

Kimbro also argues that the "actual innocence" gateway should be applied to his case to avoid a miscarriage of justice.  (Doc. 9, at [5].)  Kimbro claims that a miscarriage of justice occurred "when key [exculpatory] evidence was withheld from review."  Id.  Kimbro refers to a blue bag (containing a rock) that allegedly had blood stains on it, which he contends should have been DNA-tested, and which he contends would support a theory of self-defense.  Id.  See generally doc. 1, at [21]-[22].

A petitioner's claim of actual innocence in a non-capital case does not entitle him to habeas relief absent an independent constitutional violation in the criminal proceeding.  Herrera v. Collins, 506 U.S. 390, 400 (1993); Cress v. Palmer, 484 F.3d 844, 854-855 (6th Cir. 2007); Appleman v. Turner,  52 F.3d 324, 1995 WL 218463, at *1 (6th Cir. 1995) (TABLE, text in WESTLAW) (citing Herrera).  In Schlup v. Delo,  the Supreme Court explained the difference between a procedural innocence claim, which can permit a petitioner to transcend procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive innocence claim.  Schlup v. Delo, 513 U.S. 298, 313-317 (1995).  The Supreme Court has held that actual innocence, if shown, can serve as a gateway through which a petitioner may pass whether the impediment is a procedural bar, or expiration of the statute of limitations.  McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

## A. Equitable Tolling

The Supreme Court has held that the habeas statute of limitations may be subject to equitable tolling in appropriate cases.  Holland v. Florida, 560 U.S. 631 (2010).  However, Kimbro bears the burden of persuading the court that he is entitled to equitable tolling.  Connolly v. Howes, No. 04-2075, 2008 WL 5378012, at *4 (6th Cir. Dec. 23, 2008); Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002); Day v. Konteh, No. 1:08CV0212, 2009 WL 3321388, at *10 (N.D. Ohio Oct. 13, 2009).  A petitioner may claim actual innocence for purposes of equitable tolling, even if his conviction was the result of a plea.  Connolly, 2008 WL 5378012, at *4 (citing Bousley v. United States, 523 U.S. 614, 623 (1998)[2]).

To benefit from equitable tolling, the petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way.  *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335.  The Sixth Circuit has recently recognized that, "under the test articulated by the Supreme Court in *Holland*, a habeas petitioner must demonstrate both that he has been diligent in pursuing his rights and that an extraordinary circumstance caused his untimely filing."  *Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 750 (6th Cir. 2011), *cert. denied*, 133 S.Ct. 187 (2012).

---

[2] In *Bousley*, the Supreme Court stated that the petitioner's guilty plea would be constitutionally invalid if he had been misinformed of the elements of the offense.

The Sixth Circuit concluded that "*Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry[3] as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling." *Hall*, 662 F.3d at 750; *see also Patterson v. Lafler*, No. 10-1379, 2012 WL 48186, at *2 (6th Cir. Jan. 9, 2012) (*Holland* is relevant test).  Sixth Circuit case law has consistently held that the circumstances which will lead to equitable tolling are rare.  *Hall*, 662 F.3d at 749 (equitable tolling granted "sparingly"); *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840 (2000) (rare and exceptional).

Kimbro does not demonstrate that any extraordinary circumstance prevented him from filing his petition within the one year limitations period; rather, he relies on his "actual innocence" argument.  (Doc. 9.)

### B.  "Actual Innocence" Gateway

The Sixth Circuit has allowed for equitable tolling based on actual innocence under certain limited and extraordinary circumstances.  *McSwain v. Davis*, No. 06-1920, 2008 WL 2744640 (6th Cir. July 15, 2008), *cert. denied*, 557 U.S. 919 (2009); *Souter*, 395 F.3d at 597-599; *see also McQuiggin*, 133 S. Ct. at 1928 (tenable actual innocence claims rare).  In *Souter*, the petitioner was able to point to new evidence,

---

[3]  *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

unavailable at the time of his trial, supporting a credible claim of actual innocence. *See, e.g., Souter*, 395 F.3d at 583-584. The threshold inquiry was whether the new facts raised sufficient doubt about the petitioner's guilt to undermine confidence in his conviction. *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 317). *Souter* stated:

> To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." [*Schlup*, 513 U.S. at 327]. The [Supreme] Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 115 S.Ct. 851.

*Souter*, 395 F.3d at 590; *see also McQuiggin*, 133 S. Ct. at 1928; *Maag v. Konteh*, No. 3:05CV1574, 2006 WL 2457820, at *1 (N.D. Ohio Aug. 23, 2006).

It is Kimbro's burden to show that this is "one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence." *McSwain*, 2008 WL 2744640. To support his claim of equitable tolling, Kimbro must present "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324; *Souter*, 395 F.3d at 590. These examples were not meant to be an exhaustive list. *Souter*, 395 F.3d at 593 n.8.

10

The Supreme Court has emphasized that "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citing *Schlup*, 513 U.S. at 327); *see also McQuiggin*, 133 S. Ct. at 1928; *Connolly*, 208 WL 5378012, at *4. To demonstrate the actual innocence that would allow a court to consider a time-barred constitutional claim, a habeas petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Connolly*, 208 WL 5378012, at *4 (quoting *Schlup*, 513 U.S. at 316).

The respondent argues that the blue bag is not "new evidence," because Kimbro and his counsel were aware of this evidence prior to his plea. (Doc. 8, at 11.) Kimbro states that it is "clear by the record" that a police detective had discovered a rock covered in a blue plastic grocery bag, which bag appeared to contain blood stains, according to the detective's Jan. 10, 2007, affidavit. (Doc. 1, at [22].) The affidavit noted that the police department planned to send the bag to the state BCI for forensic testing. *Id.*

Kimbro was indicted on Feb. 8, 2007, for two counts of murder, three counts of felonious assault, one count of attempted murder, one count of tampering with evidence, two counts of having a weapon under disability, and multiple firearm specifications. (Doc. 8, RX 1.) In response to Kimbro's request, the state provided

11

discovery on March 20, 2007, which was supplemented nine times.  (Doc. 8, RX 16, at 2.)

Following plea negotiations, Kimbro entered a plea of guilty on May 7, 2008, in exchange for the prosecutor recommending a jointly-agreed sentence of eighteen (18) years to life.  (Doc. 8, at 3, and RX 3; doc. 1, at [22].)  Kimbro concedes that his "counsel was able to weigh all this evidence and determined that the best strategy was for [Kimbro] to plead guilty rather than proceed to trial."  (Doc. 1, at [22].)

The respondent contends that:

His allegation that there was blood on the "blue bag," that it was his blood, and thus was "exculpatory" evidence is entirely speculative and unsupported.  Kimbro concedes that he killed the victim, and has always asserted it was in "self-defense."  However, he has demonstrated no "new" evidence demonstrating that he is actually innocent of killing the victim.

(Doc. 8, at 11.)

Kimbro argues that he was forced to make a premature plea, and that the DNA evidence was "withheld from review" (doc. 9, at [5]), but the respondent notes that Kimbro could have chosen to wait for the testing to be conducted and elected to go to trial with the results of the testing.  (Doc. 8, at 11.)  Instead, the respondent contends that he "strategically chose to take a plea deal to a recommended minimum sentence at the time it was offered."  Id.

The respondent also points out that Kimbro's "pre-trial decision to plead guilty resulting in relinquishing any entitlement to the test results."  (Doc. 8, at 12.)  The Supreme Court has noted that when a defendant pleads guilty, he waives his

constitutional "fair trial" guarantees, including the right to receive evidence which may be favorable to the accused.  *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and other cases).  And, of course, a defendant is not entitled to withdraw his plea merely because he discovers after the plea has been accepted that he "misapprehended the quality of the State's case." *Brady v. United States*, 397 U.S. 742, 757 (1970).

Returning to the central issue, whether a credible claim of actual innocence has been established by new evidence, a court presented with new evidence must consider it in light of " 'all the evidence,' old and new, incriminating and exculpatory,' without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  *Connolly*, 208 WL 5378012, at *4 (quoting *House*, 547 U.S. at 538).  The court agrees with the respondent that the speculative results of DNA testing which apparently was not completed, cannot constitute "new evidence" in support of the actual innocence exception.  The other, pre-existing evidence that Kimbro points to does not consist of "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"  *Connolly*, 208 WL 5378012, at *4 (quoting *Schlup*, 513 U.S. at 316).

For example, in support of his miscarriage of justice argument, Kimbro contends that the coroner's evidence supports his theory that he was struck in the

back of the head, and knocked down, forcing him to shoot at the victim from a prone position.  He claims that the evidence shows that he had been shooting in an upward direction.  (Doc. 5, at [10].)  The Coroner's Verdict noted that the victim had been shot twice.  One of the gunshot wounds, to the right chest, was "superficial cutaneous." (Doc. 5, PX B, at [2].)  The other, fatal gunshot wound was to the right upper arm and chest, which perforated both lungs, the transverse aortic arch, and several ribs.  (Doc. 5, PX B, at [2].)  The course of the fatal bullet, which traveled "through his upper right arm and chest, exiting his left upper arm," was "from right to left in a nearly horizontal plane."  (Doc. 5, PX B, at [4], [5].)  The fatal bullet would not appear to have been fired at a standing victim, from a position on the floor.  The other bullet, which caused a graze type wound to the skin of the right chest "passed from right to left and from below to slightly upward." *Id.*

Kimbro also alleges that he received a "devastating injury to the back of his head" from the victim which forced him to defend his life.  (Doc. 9, at [5], [9].)  The medical evidence he submits does not support a "devastating" head injury.  In his supplement attachment to his petition, he attaches medical records from his emergency treatment.  The Emergency Department Medical Record notes, "Alleged head injury; No physical visible trauma."  (Doc. 5, PX A, at [6].)  On the History Worksheet, the primary diagnosis was "Reported alleged head injury," but the results of the physical exam were "normal," and it was also noted, "No obvious physical/visible contusion palpitation."  (Doc. 5, PX A, at [8].)  A CT scan revealed

14

no abnormalities.  (Doc. 5, PX A, at [16].)  Kimbro was discharged from the ER and told that:  "You have suffered a minor head injury."  (Doc. 5, PX A, at [16].)

Kimbro has failed to carry his burden to demonstrate that this is "one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence."  *McSwain*, 2008 WL 2744640.  Kimbro has not presented "new reliable evidence" so strong that a court cannot have confidence in the outcome of the proceedings in the trial court.  The speculative results of DNA testing which apparently was not completed, cannot constitute "new evidence" in support of the actual innocence exception.

## IV.  SUMMARY

The motion to dismiss (doc. 8) should be granted.  The statute of limitations expired in Jun 2009, and thus Kimbro's petition filed on May 29, 2015, was untimely.

As to the question of equitable tolling, Kimbro has failed to demonstrate that this is "one of those extraordinary cases where a credible claim of actual innocence has been established" by new reliable evidence.

15

## V.  RECOMMENDATION

The motion to dismiss (doc. 8) should be granted, and the petition denied as untimely filed.

Dated:  __Jan. 15, 2016__          __/s/ Kenneth S. McHargh__
                              Kenneth S. McHargh
                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).